UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Patrick Charles KINSEY,<br><br>                                    Plaintiff,<br><br>v.<br><br>Andrew SAUL,<br><br>                                    Defendant. | Case No.:  20-cv-00941-BGS<br><br>**ORDER:**<br><br>**(1) GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF No. 19];**<br><br>**(2) DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT [ECF No. 22]; AND**<br><br>**(3) REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS** |

## I.    INTRODUCTION

On May 20, 2020, Plaintiff Patrick Charles Kinsey ("Plaintiff" or "Claimant"), proceeding *pro se*, filed his Complaint seeking judicial review of the Commissioner of the Social Security Administration's ("Defendant" or "Commissioner") denial of his disability insurance benefits under the Social Security Act.  (ECF No. 1.)[1]  On May 29, 2020, this Court issued an order granting Plaintiff's IFP motion.  (ECF No. 4.)   Although the

---

[1] The Court cites the electronic CM/ECF pagination for citations.

1

Commissioner filed the Administrative Record on November 19, 2020, Plaintiff did not receive the Administrative Record until April 21, 2021.  (ECF Nos. 9, 16.)  On June 25, 2021, Plaintiff filed a Motion for Summary Judgment seeking reversal of the final decision denying benefits and a remand for further administrative proceedings.  (ECF No. 19.)  Plaintiff argued the Administrative Law Judge ("ALJ") committed reversible error for failing to properly evaluate Plaintiff's subjective complaints; improperly discounting Plaintiff's Mother's testimony; failing to determine that the Plaintiff was disabled despite finding that the Plaintiff could not perform past relevant work; improperly evaluating Plaintiff's physical and mental impairments; and erroneously proceeding to Step Five and determined that the Social Security Administration met its burden of proof.  (*Id.* at 6–20.)  On August 11, 2021, the Commissioner filed his Cross Motion for Summary Judgment and Opposition to Plaintiff's Motion.  (ECF No. 22.)  The Commissioner argued that the ALJ properly evaluated Plaintiff's subjective complaints; properly discounted Plaintiff's Mother's testimony; and substantial evidence supported the ALJ's findings as to Step Four and Step Five.  (*Id.* at 6–16.)  Plaintiff filed a Reply on August 25, 2021.  (ECF No. 25.)

After careful consideration of the parties' arguments, the administrative record and the applicable law and for the reasons discussed below, Plaintiff's Motion for Summary Judgment (ECF No. 19) is **GRANTED**, the Defendant's Cross Motion for Summary Judgment (ECF No. 22) is **DENIED**, and the case is **REMANDED** for further proceedings consistent with this Order.

## II.    PROCEDURAL HISTORY

Plaintiff filed an application for supplemental security income on September 8, 2016, with an alleged onset date of January 1, 2008.  (ECF No. 9-2 at 16.)  Plaintiff's application was first denied on March 27, 2017, (ECF No. 9-4 at 10–15), and his subsequent request for reconsideration was denied on June 28, 2017, (*Id.* at 16–22).  At Plaintiff's request, a hearing before an ALJ was held on February 25, 2019 at which

Plaintiff was represented by counsel and testified, along with Plaintiff's Mother and a Vocational Expert also providing testimony. (*Id.* at 23–25 [request for hearing], 44 [notice of hearing]; ECF No. 9-2 at 32–65 [hearing transcript].) On March 6, 2019, the ALJ issued a decision finding that Plaintiff was not disabled and denied Plaintiff's application for benefits. (ECF No. 9-2 at 16–27.) The Appeals Council denied review on March 31, 2020. (*Id.* at 2–6.)

## III.   SUMMARY OF FIVE STEPS

The ALJ's decision explains and then goes through each potentially dispositive step of the familiar five-step evaluation process for determining whether an individual has established eligibility for disability benefits.[2]   (ECF No. 9-2 at 16–27); *see Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724–25 (9th Cir. 2011); *see also* 20 C.F.R. § 404.1520.

At step one, the ALJ determined that Plaintiff had not "engaged in substantial gainful activity since September 8, 2016, the application date." (ECF No. 9-2 at 18.) At step two, the ALJ found that Plaintiff had "the following severe impairments: a seizure disorder; laminectomy and fusion of the lumbar spine with subsequent removal of hardware; a history of fractured right shoulder and shoulder dislocation status post open reduction internal fixation (ORIF); trigeminal neuralgia; migraines; and a panic disorder with

---

[2] In order to qualify for disability benefits, an applicant must show that: (1) he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death, or that has lasted or can be expected to last for a continuous period of not less than twelve months; and (2) the impairment renders the applicant incapable of performing the work that he or she previously performed or any other substantially gainful employment that exists in the national economy. *See* 42 U.S.C. §§ 423(d)(1)(A), (2)(A). An applicant must meet both requirements to be "disabled." *Id.* The claimant bears the burden of proving he is disabled. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). But, at step five, the Commissioner bears the burden of showing the claimant can do other kinds of work that exist in significant numbers in the national economy "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*

agoraphobia [.]"   (*Id.*)   At step three the ALJ considered whether the Plaintiff's impairments "meet or equal" one or more of the specific impairments or combination of impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1, the listings.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526.  Here, the ALJ found Plaintiff did not meet a listing.  (ECF No. 9-2 at 19–21.)

If the Plaintiff does not meet a listing, the ALJ "assess[es] and makes a finding about [the Plaintiff's] residual functional capacity based on all the relevant medical and other evidence in [the Plaintiff's] case record." 20 C.F.R. § 404.1520(e).  A claimant's residual functional capacity ("RFC") is the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs."   20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(c).  The RFC is used at the fourth and fifth steps to determine whether the Plaintiff can do his or her past work (step four) or adjust to other available work (step five).  *Id.*

Here, the ALJ found the following RFC for Plaintiff:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b); the claimant can lift and carry 20 pounds occasionally, 10 pounds frequently, stand/walk for six hours in an eight-hour workday and sit for six hours in an eight-hour workday, with postural limitations including occasional climbing stairs/ramps, stooping, bending, kneeling, crouching, and crawling, but no climbing ladders/ropes/scaffolds, no work on unprotected heights or dangerous machinery and no exposure to vibration with manipulative limitations including occasional lifting above shoulder level bilaterally and he can perform work activity involving routine, noncomplex tasks with no sustained, intense interaction with supervisors (incidental or brief social conversation is not precluded).

(ECF No. 9-2 at 21.)

At step four, the ALJ found that Plaintiff could not do his past relevant work as an accounting assistant.  (*Id.* at 25.)  At step five, the ALJ considers whether the Plaintiff can

do other work, considering the Plaintiff's age, education, work experience, and the limitations in the RFC.  20 C.F.R. § 404.1520(a)(4)(v).  If the Plaintiff can do other available work, then the Plaintiff is found not disabled; but if the Plaintiff cannot do any other available work, then the claimant is disabled.  *See* 20 C.F.R. § 404.1520(a)(4)(v), 404.1520(g); *see also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).  Here, the ALJ heard and relied on a vocational expert's testimony that opined that work existed in significant numbers in the national economy for a person of Plaintiff's age, education, work experience and with the RFC found by the ALJ.  (ECF No. 9-2 at 26–27.)

## IV.   SCOPE OF REVIEW

Section 405(g) of the Social Security Act allows unsuccessful claimants to seek judicial review of a final agency decision.  42 U.S.C. § 405(g).  This Court has jurisdiction to enter a judgment affirming, modifying, or reversing the Commissioner's decision.  *See id.*; 20 C.F.R. § 404.900(a)(5).  The matter may also be remanded to the Social Security Administration for further proceedings.  42 U.S.C. § 405(g).

If the Court determines that the ALJ's findings are not supported by substantial evidence or are based on legal error, the Court may reject the findings and set aside the decision to deny benefits.  *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001).  The Court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).  The Court may "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely."  *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).  "When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ."  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

///

## V.    DISCUSSION

Plaintiff argued that the ALJ erred by: (1) failing to properly evaluate Plaintiff's subjective complaints; (2) improperly discounting Plaintiff's Mother's testimony; (3) failing to determine that the Plaintiff was disabled despite finding that the Plaintiff could not perform past relevant work; (4) failing to evaluate Plaintiff's combined physical and mental impairments; and (5) erroneously proceeding to Step Five and determined that the Social Security Administration met its burden of proof.  (ECF No. 19 at 6–20.)  The Court will first address whether the ALJ erred in evaluating Plaintiff's testimony as to the severity of his symptoms.

### A. Applicable Standard

The ALJ must engage "in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible."  *Garrison*, 759 F.3d at 1014 (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007)).  At the first step, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Id.*  "Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence."  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991)).

If the claimant satisfies the first step and there is no determination of malingering by the ALJ, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so."  *See Smith v. Kijakazi*, 14 F.4th 1108, 2021 WL 4486998, *2 (9th Cir. 2021); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)); *Garrison*, 759 F.3d at 1014–15; *Parra v. Astrue*, 481 F.3d 742, 750 (9th

Cir. 2007)).  This standard is "the most demanding required in Social Security cases." *Smith*, 2021 WL 4486998, at *2 (citing *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).  This court has set forth the specific finding required:

> [A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination. To ensure that our review of the ALJ's credibility determination is meaningful, and that the claimant's testimony is not rejected arbitrarily, we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination.

*See Smith*, 2021 WL 4486998, at *3; *see also Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) ("[T]he ALJ must identify the specific testimony that he discredited and explain the evidence undermining."); *Treichler*, 775 F.3d at 1102 (finding that the Ninth Circuit "require[s] the ALJ to 'specifically identify the testimony from a claimant [the ALJ] finds not to be credible and [. . .] explain what evidence undermines this testimony."); *Parra*, 481 F.3d at 750 ("The ALJ must provide clear and convincing reasons to reject a claimant's subjective testimony, by specifically identifying what testimony is not credible and what evidence undermines the claimant's complaints."); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002); *Smolen*, 80 F.3d at 1284 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."); *Lester*, 81 F.3d at 834 ("[T]he ALJ must identify what testimony is not credible and what evidence the claimant's complaints.").

The ALJ is "required to point to specific facts in the record" and may use "ordinary techniques of credibility determination."  *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (citing *Vasquez v. Astrue*, 572 F.3d 586, 592 (9th Cir. 2009)); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (citing *Smolen*, 80 F.3d at 1284).  The ALJ may consider the "inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work records, and testimony from physicians and third

parties concerning the nature, severity and effect of the symptoms of which he complains." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997); *Thomas*, 278 F.3d at 958–59; *Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (quoting *Orteza v. Shalala*, 50 F.3d 748, 749–50 (9th Cir. 1995)).  However, if the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing.  *See Thomas*, 278 F.3d at 959 (citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999)).

### B. Analysis

As to Step One, the ALJ first determined that the Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms.  (ECF No. 9-2 at 21–23.)  Regarding Step Two, the ALJ did not find that Plaintiff was malingering and evaluated the intensity, persistence, and limiting effects of the Plaintiff's symptoms to determine the extent to which they limit the Plaintiff's functional limitations.  (*See id.* at 23–25.)  The issue presented before the Court is whether the ALJ specified what portion of Plaintiff's testimony and complaints that he found not to be credible, and then provided clear and convincing reasons supported by evidence in the record.  *See Treichler*, 775 F.3d at 1102 ("[T]he ALJ must provide 'specific, clear and convincing reasons for' rejecting the claimant's testimony regarding the severity of the claimant's symptoms.").

### 1. Trigeminal Neuralgia[3]

#### a. Plaintiff's Testimony

Plaintiff testified that he had Trigeminal Neuralgia and explained that "it's a nerve and I, I have pain. It's in my forehead, and it goes around here and then into my, my -- below my ear." (ECF No. 9-2 at 51.)  Plaintiff described his facial pain as "constant" and

---

[3] Trigeminal Neuralgia is "an ongoing pain condition that affects certain nerves in your face."  Michael Smith, MD, *Trigeminal Neuralgia*, WEB MD (Oct. 21, 2021 2:43 PM), https://www.webmd.com/pain-management/guide/trigeminal-neuralgia.

"excruciating sharp just painful poke to my whole head.  And I that was something to where I had to drop to my knees."  (*Id.* at 51–52.)  As to whether Trigeminal Neuralgia affected his ability to concentrate or focus, Plaintiff responded "[y]es, yes.  I can't, I can't keep my eyes open.  And I, I, I mean, I'm screaming."  (*Id.* at 52.)  Regarding how often he has the pain, Plaintiff stated that "[i]t's always there in the back of -- but if I have the – I've been lucky enough to where I haven't had the excruciating number two type of it since I've been on the Tegretol."  (*Id.* at 52.)  Plaintiff testified as to the effects of his medications that "some days, with the medication I take, just, it, you know, just I start in the morning, it pretty much wipes me out. [. . .] [B]asically, it just makes me really super tired" and also indicated "I always have issues with my sleeping.  So, when I take my medication, yeah, I, I'm sleeping for like, a couple hours, many [. . .] hours."  (*Id.* at 47, 50.)

As to his findings regarding Plaintiff's testimony, the ALJ stated "I have considered the testimony by the [Plaintiff] at the hearing in this matter, that the [Plaintiff] [. . .] experiences [. . .] trigeminal neuralgia[.] However, the objective medical evidence is inconsistent with [his] testimony in that the physical examinations of record reveal primarily benign findings and there is no history of therapy treatment or individual counseling over an extended period of time."  (*Id.* at 24.)

Other than his statement that "the objective medical evidence is inconsistent with [Plaintiff's] testimony in that the physical examinations of record reveal primarily benign findings and there is no history of therapy treatment or individual counseling over an extended period of time," the ALJ did not address Plaintiff's testimony.  The ALJ's decision lacked any mention of Plaintiff's specific testimony about the intensity, persistence, and limiting effects of his Trigeminal Neurologia.  The ALJ failed to specifically identify any part of Plaintiff's testimony that he determined was not credible and neglected to provide any specific reasons, let alone clear and convincing reasons supported by the record, for discounting Plaintiff's testimony, which has prevented the

Court from conducting a meaningful judicial review.  *See Leon v. Berryhill*, 880 F.3d 1041, 1046 (9th Cir. 2017) ("[T]he ALJ was required, at the least, to provide germane reasons for rejecting testimony that corroborates a claimant's pain testimony."); *Parra*, 481 F.3d at 750 ("The ALJ must provide clear and convincing reasons to reject a claimant's subjective testimony, by specifically identifying what testimony is not credible and what evidence undermines the claimant's complaints."); *Reddick*, 157 F.3d at 722 ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."); *Smolen*, 80 F.3d at 1284 ( [a]n ALJ "must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion.").  And the ALJ cannot expect the courts to "comb the administrative record to find specific conflicts."  *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015); *see also Reddick*, 157 F.3d at 722 ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.").

The ALJ's decision only provided a general and conclusory statement, and failed to provide any analysis to connect his conclusion to any evidence in the record.  The ALJ failed to specifically identify what testimony that he found was not credible and failed to identify what evidence undermined the Plaintiff's complaints.  *See Lester*, 81 F.3d at 834.  When the ALJ fails to specify what part of Plaintiff's testimony he rejected and fails to demonstrate how the evidence provides clear and convincing reasons its rejection, the court cannot proceed without substituting its own conclusions for the ALJ's and cannot determine whether the substantial evidence supported the ALJ's decision.  *See Brown-Hunter*, 806 F.3d at 494 ("Because the ALJ failed to identify the testimony she found not credible, she did not link that testimony to the particular parts of the record supporting her non-credibility determination. This was legal error."); *Rosel A. v. Saul*, No. 20CV1098-MSB, 2021 WL 2588156, at *4 (S.D. Cal. June 2021) (citing *Treichler*, 775 F.3d at 1103).

1    Therefore, the Court concludes that the ALJ erred by rejecting Plaintiff's testimony

2    as to his Trigeminal Neurologia and prevented the Court from being able to determine

3    whether the ALJ's decision is supported by substantial evidence.

4    b.   Plaintiff's Complaints in Medical Record

5    As for Plaintiff's complaints in the medical records regarding Trigeminal

6    Neurologia, the ALJ stated that the "record shows that the [Plaintiff] complained that his

7    conditions have worsened and he reported that he continues to experience pain in his face."

8    (ECF No. 9-2 at 23.)   The ALJ found that Plaintiff's complaints were not supported by the

9    objective medical evidence.  (*Id.*)   To support his finding, the ALJ first noted that changing

10   "from Lamictal to Tegretol [. . .] resulted in [Plaintiff] reporting improvement in his face

11   pain."  (*Id.*)   Then later in the decision, the ALJ generally cited to the Kaiser Permanente

12   records where he stated that "after [the Plaintiff] was placed on Tegretol, he has not had

13   facial pain or seizure episodes despite the fact that he is not fully compliant with

14   medications and follow up visits."  (*Id.*)   The ALJ also noted that "there [was] no evidence

15   of trigeminal neuralgia alleged or noted" in Dr. Kanner's report.  (*Id.* at 23–24.)

16   The Court finds that the record as a whole does not support the ALJ's basis for

17   discrediting Plaintiff's complaints in the medical records regarding his Trigeminal

18   Neuralgia.   On February 3, 2016, Dr. Edelstein noted that Plaintiff complained of pain in

19   his head radiating to his jaw and neck.  (ECF No. 9-7 at 14.)   Dr. Edelstein recapped

20   Plaintiff's history and stated Plaintiff was brought to the emergency due to facial pain,

21   where he had intermittent severe sharp pain in the right temporal region, as well as near his

22   right ear/neck and jaw region.  (*Id.*)   Plaintiff indicated that this pain can last for seconds

23   or minutes, and is a 10 out of 10 in pain when it happens.  (*Id.*)   The ED Emergency Notes,

24   also dated February 3, 2016, assessed and diagnosed that Plaintiff suffered from right

25   Trigeminal Neuralgia.  (*Id.* at 16, 63, 65, 66.)   A March 8, 2016 Telephone Encounter

26   indicated that Plaintiff was in the ER due to facial paralysis.  (*Id.* at 12.)

27

28

1      On March 2, 2017, Dr. Spier assessed and diagnosed Plaintiff with Trigeminal

2  Neuralgia.  (ECF No. 9-7 at 110, 123.)  Dr. Tribble's March 8, 2017 Complete Mental

3  Evaluation noted that Plaintiff remained in chronic pain and that he had a history of facial

4  pain.  (*Id.* at 144.)  Dr. Tribble noted under Axis III that Plaintiff suffered from Trigeminal

5  Neuralgia.  (*Id.* at 144.)  On April 24, 2018, Dr. Spier noted in the "assessment" section

6  that Plaintiff suffered from right Trigeminal Neuralgia.  (ECF No. 9-8 at 52.)  Dr. Konor's

7  April 24, 2018 Progress Notes indicated that they are monitoring Plaintiff's Tegretol levels

8  and that Plaintiff has a history of Trigeminal Neuralgia.  (*Id.* at 69.)

9      The ALJ focused solely on Dr. Kanner's report wherein the ALJ found that there

10  was no evidence of Trigeminal Neuralgia alleged or noted in Dr. Kanner's report.

11  However, he failed to acknowledge this other contradictory evidence as stated above nor

12  why this contradictory evidence did not affect his decision. *See Robbins*, 466 F.3d at 882

13  ("However, a reviewing court must consider the entire record as a whole and may not

14  affirm simply by isolating a 'specific quantum of supporting evidence.'").

15      In regard to Plaintiff changing his medication to Tegretol partly to treat his

16  Trigeminal Neuralgia, the ALJ found that this change "resulted in [Plaintiff] reporting

17  improvement in his face pain." (ECF No. 9-2 at 23.)  Then the ALJ generally cited to the

18  Kaiser Permanente records and stated that Plaintiff had no facial pain after being placed on

19  Tegretol, despite not being fully compliant with his medications.  (*Id.*)  However, other

20  medical records show that Plaintiff's Trigeminal Neuralgia was never eliminated through

21  his use of Tegretol.

22      Dr. Spier's March 15, 2016 Notes stated that Plaintiff was seen in the ER for facial

23  pain and currently taking 200 mg of Tegretol.  (ECF No. 9-7 at 10–12.)  Then on July 6,

24  2016, Dr. Spier noted that Plaintiff changed to Tegretol to help with facial pain after having

25  been seen in the ER for pain and noted that Plaintiff's pain is subsiding.  (*Id.* at 4–6.)  On

12

March 2, 2017, Dr. Spier assessed and diagnosed Plaintiff with Trigeminal Neuralgia. (ECF No. 9-7 at 110, 123.)

Dr. Tribble's March 8, 2017 Complete Mental Evaluation noted that Plaintiff remained in chronic pain and that he had a history of facial pain. (*Id.* at 144.) A May 3, 2017 Disability Report Appeal noted that Plaintiff complained of a change as to his physical or mental conditions since his last visit and noted that his conditions have worsened, with him still having a lot of pain in his face. (ECF No. 9-6 at 16.) The August 17, 2017 Disability Report Appeal stated that every day Plaintiff had constant pain in his face, while each episode lasting between three to thirty days. (*Id.* at 24.) Nursing Notes dated October 10, 2017 indicated that Tegretol helped Plaintiff's facial pain. (ECF No. 9-8 at 35.)

These records support that Tegretol had only ameliorated Plaintiff's pain from Trigeminal Neuralgia and did not indicate that this actually stopped Plaintiff's pain altogether. The ALJ never explained or resolved this conflict in his decision. Thus, the Court concludes that the ALJ erred in rejecting Plaintiff's complaints in the medical record regarding Trigeminal Neuralgia for failing to address the entire medical record as a whole and for failing to provide clear and convincing reasons supported by substantial evidence.

### 2. Difficulty Concentrating

#### a. Plaintiff's Testimony

In regards to difficulty concentrating, Plaintiff testified that although he tried going back to work, he had to stop after six months because he "just had issues with keeping on task[.]" (ECF No. 9-2 at 43.) As to what prevented him from returning to working, Plaintiff indicated that "being around people is frustrating. I just have – I'm just nothing that I used to be. I don't even I can't, I can't explain it, it's just something where I, I just get totally overwhelmed." (*Id.* at 48.) And when he gets overwhelmed, Plaintiff claimed that "I start to shake, I start to sweat and I, I, you know what? I just feel like I -- just

1  laying[.]" (*Id.* at 50.)  Regarding whether the facial pain affected his ability to concentrate
2  or focus, Plaintiff testified "[y]es, yes.  I can't, I can't keep my eyes open.  And I, I, I mean,
3  I'm screaming." (*Id.* at 52.)  Plaintiff testified that he was taking Lexapro and Hydroxyzine
4  for his anxiety at the time of the hearing.  (*Id.* at 46, 47.)

5      As to his findings regarding Plaintiff's testimony, the ALJ stated "I have considered
6  the testimony by the [Plaintiff] at the hearing in this matter, that the [Plaintiff] has difficulty
7  concentrating[.] However, the objective medical evidence is inconsistent with [his]
8  testimony in that the physical examinations of record reveal primarily benign findings and
9  there is no history of therapy treatment or individual counseling over an extended period
10 of time." (*Id.* at 24.)

11     First, the ALJ did not cite to any objective evidence in the record to support his
12 finding.  The ALJ cannot expect the Court to "comb the administrative record to find
13 specific conflicts" to support his decision.  *See Brown-Hunter*, 806 F.3d at 494.  Further,
14 the ALJ failed to specify what part of Plaintiff's testimony he rejected, thereby failing to
15 provide clear and convincing reasons for its rejection.  *See Parra*, 481 F.3d at 750 ("The
16 ALJ must provide clear and convincing reasons to reject a claimant's subjective testimony,
17 by specifically identifying what testimony is not credible and what evidence undermines
18 the claimant's complaints.").  The Court cannot proceed without substituting its own
19 conclusions for the ALJ's and cannot determine whether substantial evidence supported
20 the ALJ's decision.  *See Brown-Hunter*, 806 F.3d at 494 ("Because the ALJ failed to
21 identify the testimony she found not credible, she did not link that testimony to the
22 particular parts of the record supporting her non-credibility determination. This was legal
23 error."); *Rosel A. v. Saul*, 2021 WL 2588156, at *4 (citing *Treichler*, 775 F.3d at 1103).

24     Accordingly, the Court concludes that the ALJ erred by rejecting Plaintiff's
25 testimony as to his difficulty concentrating.
26 ///

27

28

14

b.   Plaintiff's Complaints in Medical Record

As regards to Plaintiff's complaints in the medical record, the ALJ stated:

> The record shows that the claimant complained that his conditions have worsened, and he reported that he continues to experience pain in his face. He reported episodes of migraines at least two times a week lasting at least one or two days. He stated that his back pain is constant and radiates down both legs. He stated that he is having petit mal seizures two to three times a month as well as two grand mal seizures every two months. The claimant also alleged that he continues to struggle with anxiety, and he reported having around two to three panic attacks a month.

(ECF No. 9-2 at 23.)   The ALJ made no reference to Plaintiff's complaints regarding his ability to concentrate.  (*See id.* at 23–24.)

Notwithstanding, the ALJ did note that during Dr. Tribble's psychological evaluation the Plaintiff complained that it was "difficult to stay focused and on task. [Plaintiff] has also alleged that his ability to perform crucial routine, daily tasks has been affected due to his seizures, chronic back pain due to surgeries and shoulder pain due to surgeries[.]"  (*Id.* at 23.)  In response to these complaints made by Plaintiff, the ALJ stated that the March 2017 records show that "the [Plaintiff] was able to leave the house, take a bus independently, and walk-through streets to his appointment for which he was on time. Records show that mental status examination was essentially benign with normal thought processes and speech as well as intact concentration and calculation."  (*Id.*)  The ALJ then indicated that:

> Dr. Tribble found that the claimant remains functional in routine activities of daily living. Dr. Tribble noted that the claimant maintains self-care independently including dressing, bathing and personal hygiene. He can utilize public transportation independently, and he took the bus to this evaluation. On a daily basis, he helps take care of his mother, walks the dog and cooks. He can go out alone, pay bills and handle cash appropriately. He engages in routine household tasks such as running errands, shopping and cooking.

(*Id.* at 24.)   The ALJ may consider "whether the claimant engages in daily activities inconsistent with alleged symptoms" to contradict Plaintiff's complaints.  *Lingenfelter*, 504 F.3d at 1040.  Nevertheless, daily activities may only be grounds for discrediting a claimant's testimony when a claimant "is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting."  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  The ALJ failed to address how the cited daily activities are transferable to Plaintiff being able to spend a substantial part of the day engaged in performing the physical functions in a work setting.  The routine daily activities listed by Dr. Tribble do not correlate to Plaintiff's ability to concentrate for a substantial part of the day and do not involve lengthy concentration.

The ALJ also noted that the "[r]ecords show that [Plaintiff's] mental status examination was essentially benign with normal thought processes and speech as well as intact concentration and calculation."  (ECF No. 9-2 at 23.)  However, Dr. Tribble reported on the March 8, 2017 mental evaluation[4] that Plaintiff found it hard to stay focused and on task, and indicated that Plaintiff was unable to focus during the interview and had difficulty making decisions.[5]   (ECF No. 9-7 at 140, 141.)   Further, Dr. Tribble's diagnostic

---

[4] The ALJ cited to B7F in referring to Dr. Tribble's psychological exam.  (ECF No. 9-2 at 23.)  However, B7F is Dr. Kanner's Complete Internal Medicine Evaluation and does not discuss Plaintiff's psychological evaluation.  (ECF No. 9-7 at 124–36.)  Dr. Tribble's psychological evaluation is actually B8F.  (*Id.* at 137–46.)

[5] The only parts of Dr. Tribble's Mental Evaluation wherein he specifically assessed Plaintiff's concentration was in the "Concentration and Calculation" section and Dr. Tribble's Functional Assessment.  (ECF No. 9-7 at 143.)  Dr. Tribble's "Concentration and Calculation" section indicated:

> The claimant was able to perform serial 7's. The claimant said that 80 cents would be received from a dollar if two oranges were bought at 10 cents each. The claimant gave the following answers when asked to do the following simple calculations: 2 + 3 = 5, 5 x 3 = 15, and 9 - 3 = 6. The claimant did not use finger counting when doing simple calculations. The claimant could spell "world" forwards. The claimant could spell "world" backwards. The claimant was able to complete this portion of the examination well.

1    impression found that Plaintiff suffered from a panic disorder with Agoraphobia and

2    Generalized Anxiety Disorder under AXIS I.  (*Id.* at 144.)  The ALJ also found that Plaintiff

3    suffered from seizures, migraines, Trigeminal Neuralgia, and chronic pain with history of

4    spine surgery under AXIS III.  (*Id.*)  The ALJ's analysis did not address these other illnesses

5    in his decision nor did the ALJ determine whether any or all of Plaintiff's diagnosed

6    illnesses combined could affect Plaintiff's ability to concentrate.  *See Robbins*, 466 F.3d at

7    882 ("However, a reviewing court must consider the entire record as a whole and may not

8    affirm simply by isolating a 'specific quantum of supporting evidence.'").

9         Additionally, Dr. Tribble indicated that Plaintiff's mood "presented as anxious with

10   affect that was mood congruent" and found that Plaintiff had moderate impairment as to

11   his ability to maintain concentration, attention persistence and pace.  (ECF No. 9-7 at 143–

12   45.)  Dr. Tribble went on to find that Plaintiff "experiences recurrent, unexpected panic

13   attacks and has excessive worry about a number of concerns with anxiety that has been

14   difficult to manage."  (*Id.* at 144.)  The ALJ ignored these sections of Dr. Tribble's

15   evaluation that give more credence to Plaintiff's statements and supports Plaintiff's

16   complaints that he had difficulty staying focused and on task.[6]

17        In sum, the ALJ failed to acknowledge any of the evidence cited herein as to

18   Plaintiff's inability to concentrate nor why this evidence did not affect his decision.

19   Accordingly, the Court concludes that the ALJ erred in rejecting Plaintiff's complaints in

20

21

22   (*Id.*)  However, the "Concentration and Calculation" section only evaluated whether Plaintiff could

23   perform these listed mathematical calculations and the Functional Assessment indicated that the Plaintiff

     actually had a moderate impairment regarding his ability to maintain concentration, attention, persistence,

24   and pace.  (*Id.*)

25   [6] On May 3, 2017, Plaintiff complained in the Disability Report Appeal that he was unable to fully sleep

26   and lacks concentration.  (ECF No. 9-6 at 20.)  Plaintiff indicated that there had been a change in his daily

     activities due to his physical or mental conditions, which he noted that he was unable to concentrate and

27   is not able to finish a task from start to finish, while getting overwhelmed easily.  (*Id.* at 20, 21.)

28

1    the medical record as to his difficulty concentrating.  The ALJ failed to address the entire

2    medical record as a whole and did not provide to provide clear and convincing reasons

3    supported by substantial evidence.

4              3.  Migraines

5                   a.  Plaintiff's Testimony

6         At the hearing, Plaintiff testified that he suffers from migraines 10-12 times monthly.

7    (ECF No. 9-2 at 48). He is currently taking Imitrex for his migraines.  (ECF No. 9-2 at 49)

8    As for how long his migraines can last, Plaintiff stated that "they could last up to two, three

9    days, three days if, if I don't get the Imitrex in time."  (*Id.*)  Even after taking Imitrex on

10   time, Plaintiff stated that his migraines can last for an hour and he still "[has] to lie – [he

11   has] to close [his] eyes, keep [his] eyes shut and lay down flat.  Like, [he] can't getting

12   really like, dizzy, sick to my stomach."  (*Id.* at 49–50.)

13        The ALJ found that he had "considered the testimony by the [Plaintiff ] at the hearing

14   in this matter, that the [Plaintiff] [. . .] experiences [. . .] migraines[.] However, the objective

15   medical evidence is inconsistent with [his] testimony in that the physical examinations of

16   record reveal primarily benign findings and there is no history of therapy treatment or

17   individual counseling over an extended period of time."  (*Id.* at 24.)

18        The ALJ did not cite to any medical records to support this conclusion.  The ALJ

19   did not explain how benign findings from physical examinations correlate to Plaintiff's

20   testimony regarding migraines. Nor did the ALJ explain how therapy treatment or

21   individual counselling somehow resolve Plaintiff's severe migraines.

22        In addition, the ALJ did not address Plaintiff's testimony about the intensity,

23   persistence, and limiting effects of his migraines, especially as it regards to Plaintiff's

24   testimony that he suffers from migraines 10–12 times a month.  The ALJ also did not

25   address Plaintiff's testimony regarding the side effects of Imitrex.  In fact, the ALJ failed

26   to specifically identify any part of Plaintiff's testimony that he determined was not credible,

27

28

1   which prevents the Court from conducting a meaningful judicial review.  *See Smolen*, 80

2   F.3d at 1284 ( [a]n ALJ "must state specifically which symptom testimony is not credible

3   and what facts in the record lead to that conclusion.").  Courts are not expected to "comb

4   the administrative record to find specific conflicts" to support the ALJ's position.  *See*

5   *Brown-Hunter*, 806 F.3d at 494.

6         The ALJ's decision lacked analysis and only provided conclusory findings.  The

7   ALJ failed to specifically identify what testimony was not credible and what evidence

8   undermined the Plaintiff's complaints.  *Lester*, 81 F.3d at 834.  "And when an ALJ fails to

9   specify the rejected testimony and how the evidence provides clear and convincing reasons

10  to reject it, the reviewing court cannot proceed without 'substitut[ing its own] conclusions

11  for the ALJs, or speculat[ing] as to the grounds for the ALJ's decision'" and "the reviewing

12  court cannot determine whether the substantial evidence supported the ALJ's decision."

13  *See Brown-Hunter*, 806 F.3d at 494 ("Because the ALJ failed to identify the testimony she

14  found not credible, she did not link that testimony to the particular parts of the record

15  supporting her non-credibility determination. This was legal error.").

16        Therefore, the Court concludes that the ALJ erred in rejecting Plaintiff's testimony

17  regarding his migraines.

18                    b.   Plaintiff's Complaints in Medical Record

19        As for Plaintiff's complaints in his medical records regarding his migraines, the ALJ

20  stated that the "record shows that the claimant complained that his conditions have

21  worsened and he [. . .] reported episodes of migraines at least two times a week lasting at

22  least one or two days."  (ECF No. 9-2 at 23.)  The ALJ then made a general statement that

23  these allegations are not supported by objective medical evidence.  (*Id.*)

24        Despite acknowledging these complaints, the ALJ did not address them in any

25  analysis.  The ALJ failed to point to any objective medical evidence to support his

26  conclusion. The ALJ may not discredit Plaintiff's complaints simply because they are

27

28

unsupported by objective medical evidence.  *See Reddick*, 157 F.3d at 722 ("[T]he Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.") (citing *Bunnell*, 947 F.2d at 343).

However, even looking at the record as a whole, the Court finds that the ALJ's basis for discrediting Plaintiff's complaints in the medical records regarding his migraines is not supported by substantial evidence.  For example, on February 11, 2015, Dr. Spier noted that Plaintiff was having migraines once per week, which was one of his main diagnoses for that visit and was told to treat his migraines early and use Imitrex. (ECF No. 9-7 at 19–21.)  The emergency room doctor's October 8, 2015 discharge notes listed migraines as one of Plaintiff's active problems.  (*Id.* at 23, 26, 58, 63.)  On November 24, 2015, Plaintiff urgently requested an appointment after having multiple seizures and headaches since his last visit and Dr. Spier assessed that Plaintiff was suffering from migraines.  (*Id.* at 17.)  In Plaintiff's active problems list from between October 7, 2015 to July 6, 2016, it states that Plaintiff suffered from migraines.  (*Id.* at 3, 58.)

On February 3, 2016, the emergency department notes stated that Plaintiff's chief complaint was his headache that had lasted for about three days and was worsening. (*Id.* at 14, 63.)  Plaintiff's active problems also listed migraines.  (*Id.*)  Regarding the September 17, 2016 Disability Report, the remarks stated that Plaintiff "suffer[ed] from migraines and dizzy spells with migraines lasting for almost 3 days. Feels nauseous and has blurry vision. Will be out of it for 1–2 hours after having seizures."  (ECF No. 9-6 at 12.)  On March 2, 2017, Dr. Spier's initial assessment noted that Plaintiff had migraines.  (ECF No. 9-7 at 110, 123.)  In the May 3, 2017 Disability Report Appeal, Plaintiff indicated that his migraines were worsening and had them at least two times a week, lasting for at least one or two days.  (ECF No. 9-6 at 16.)

20

On March 6, 2017, Dr. Kanner noted that Plaintiff had migraines that occured approximately four times a month and can last up to two or three days.  (ECF No. 9-7 at 127.)   In fact, Dr. Kanner noted that one Plaintiff's chief complaints was his migraine headaches.  (*Id.* at 126.)   Dr. Kanner wrote that Plaintiff's migraines were formally diagnosed in 2014 and Plaintiff was being treated with Imitrex for his migraines.  (*Id.* at 127, 128.)  In his exam on March 8, 2017, Dr. Tribble's diagnostic findings listed migraines under Axis III and acknowledged that Plaintiff had a history of migraines.  (*Id.* at 144.)  The August 17, 2017 Disability Report indicated that Plaintiff complained that his medical conditions had changed for the worse, that his conditions have not improved, and that he had more migraines.  (ECF No. 9-6 at 24.)   The report stated that Plaintiff had migraines three times a week, lasting up to two days.  (*Id.* at 24.)   Further, in indicating what has changed in his daily activities due to his physical or mental conditions since his last visit, Plaintiff stated that it is typical to get a migraine after coming home from the pain clinic and that he will then try to sleep it off.  (*Id.* at 29.)

In the October 10, 2017 Nursing Notes, it was noted that Plaintiff had migraines once per week.  (ECF No. 9-8 at 36.)  The April 24, 2018 Nursing Notes listed migraines as part of the reason for his visit and assessed that Plaintiff in fact suffered from migraines. (*Id.* at 52.)   In the November 26, 2018 Progress Notes, Dr. Spier noted that Plaintiff complained of his migraines worsening if unable to sleep well and provided Plaintiff with instructions on how to try to reduce severity of migraines.  (*Id.* at 106, 110, 111.)   In fact, a May 3, 2017 Disability report indicated that Plaintiff was only taking two medications for migraines, Sumatriptan and Reglan.  (ECF No. 9-6 at 19.)  However, on February 12, 2019, Plaintiff's list of medications for his migraines listed three medications for treating migraines, Imetrex, Reglan, and Nortriptyline.  (*Id.*at 45.)  One can infer from this that Plaintiff's migraines may not have been improving, based on the increased medication used to treat his migraines.

1    The ALJ's decision failed to acknowledge Plaintiff's complaints in the medical
2    records of his migraines. He did not consider Plaintiff's overall medical records that had
3    documented Plaintiff's complaints as to his migraines and that the Plaintiff had been treated
4    for his migraines throughout his time leading up to and after the filing of his supplemental
5    security income application.

6    Therefore, the Court concludes that the ALJ also erred in rejecting Plaintiff's
7    complaints in medical record without specifically addressing Plaintiff's complaints
8    regarding his migraines and why they were unsupported by the record, as well as failing to
9    provide clear and convincing reasons for such rejection, making the Court unable to
10   determine whether the ALJ's decision was supported by substantial evidence.

11   4.   <u>Chronic Back Pain</u>

12   a.   Plaintiff's Testimony

13   Plaintiff testified that the car accident was the reason why he hurt his back and
14   described his surgeries following the accident as "a laminectomy, and a discectomy, and a
15   fusion with hardware." (ECF No. 9-2 at 39–40.) Plaintiff indicated that his back
16   "obviously wasn't going to -- there was no 100 percent. [The doctor] said, if I can get
17   you back to about 75 percent -- and then, your pain levels, if I can get your pain levels
18   about half[.]" (*Id.* at 41.) In addressing the ALJ's question on whether he could find
19   another job that was not too stressful, Plaintiff stated that the reason why he couldn't go
20   back to sport and commercial fishing was his back. (*Id.* at 43.) Plaintiff testified "[i]t was,
21   it was, it was everything. It was -- there was no more. I couldn't, you know, tug on -- you
22   know, the fishing part, I was already past catching fish, you know, more helping out the
23   customers. But I couldn't, you know, pulling -- getting the anchor stuck or such. I mean,
24   there was, there was a lot of things that I couldn't, I couldn't even do. I couldn't, I couldn't
25   even drag a, a big tuna fish across the deck, I mean, to help the guys fillet it[.]" (*Id.*)
26   *///*

27

28

As to his findings regarding Plaintiff's testimony, the ALJ stated "I have considered the testimony by the [Plaintiff . . .] at the hearing in this matter, that the [Plaintiff] [. . .] experiences [. . .] chronic back pain. However, the objective medical evidence is inconsistent with [his] testimony in that the physical examinations of record reveal primarily benign findings and there is no history of therapy treatment or individual counseling over an extended period of time."  (*Id.* at 24.)

The ALJ did not address Plaintiff's testimony about the intensity, persistence, and limiting effects of his chronic back pain. In fact, the ALJ failed to specifically identify any part of Plaintiff's testimony that he determined was not credible, thus preventing the Court from conducting a meaningful judicial review.  *See Smolen*, 80 F.3d at 1284 (An ALJ "must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion.").

The only statement that the ALJ provided in support of his decision to reject the Plaintiff's testimony was when he stated that "the objective medical evidence is inconsistent with [Plaintiff's] testimony in that the physical examinations of record reveal primarily benign findings and there is no history of therapy treatment or individual counseling over an extended period of time." (ECF No. 9-2 at 24.)  Apart from this general statement, the ALJ failed to provide any specific reasons, supported by evidence in the record, for discrediting Plaintiff's testimony.  *See Reddick*, 157 F.3d at 722 ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.").

The ALJ's conclusory statement failed to specifically identify what testimony was not credible and what evidence undermined the Plaintiff's testimony.  And the Court is not expected to "comb the administrative record to find specific conflicts."  *Brown-Hunter*, 806 F.3d at 494.

///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Therefore, the Court concludes that the ALJ erred in rejecting Plaintiff's testimony regarding his chronic back pain without specifically addressing which of Plaintiff's complaints were inconsistent with the record and failing to provide clear and convincing reasons supported by substantial evidence for rejecting his testimony.

b.   Plaintiff's Complaints in Medical Record

As for Plaintiff's complaints in medical record regarding chronic back pain, the ALJ stated that the "record shows that the claimant complained that his conditions have worsened and he [. . .] stated that his back pain is constant and radiates down both legs." (ECF No. 9-2 at 23.)  The ALJ stated that this allegation was simply not supported by the objective medical evidence of the record.  (*Id.*)  The ALJ acknowledged that during his visit to Dr. Tribble for psychological evaluation, Plaintiff reported that "[h]e has also alleged that his ability to perform crucial routine, daily tasks has been affected due to his [. . .] chronic back pain due to surgeries[.]"  (*Id.*)

Although the ALJ acknowledged that the Plaintiff had complained of having chronic back pain and indicated that his allegations were not supported by the record, even referring to a specific complaint made to Dr. Tribble, the ALJ failed to cite any other evidence to support his conclusion that Plaintiff's allegations of chronic back pain was not supported by the objective medical evidence.  (*See id.* at 23–24.)  Additionally, the ALJ may not discredit the Plaintiff's complaints solely because they are unsupported by objective medical evidence.  *See Reddick*, 157 F.3d at 722 ("Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.") (citing *Bunnell*, 947 F.2d at 343).

Notwithstanding, looking at the entire record as a whole, the Court finds that the ALJ's basis for discrediting Plaintiff's complaints are not supported by substantial evidence.  For instance, Plaintiff's list of active problems between October 7, 2015 to July

24

6, 2016 stated that Plaintiff suffered from chronic pain.  (ECF No. 9-7 at 3.)  The emergency room doctor's October 8, 2015 discharge notes indicated that Plaintiff had a past medical history of chronic lower back pain and also listed chronic pain under Plaintiff's active problem list.  (*Id.* at 23, 26, 58, 63.)

Additionally, in the February 3, 2016 emergency department notes, Dr. Edelstein noted that Plaintiff had chronic lower back pain in his past medical history.  (*Id.* at 14.)  On March 6, 2017, Dr. Kanner noted in her Complete Internal Medicine Evaluation that Plaintiff had a lower back injury with three surgeries and that his back pain has worsened with lifting or turning, while having discomfort in walking after one block and unable to run without pain.  (*Id.* at 127.)  Dr. Kanner noted that one of Plaintiff's chief complaints was his lower back.  (*Id.* at 126.)  On March 8, 2017, Dr. Tribble noted in the "Current Reported Limitations" section of his Complete Mental Evaluation that Plaintiff's "ability to perform crucial day to day tasks has been affected due to his [. . .] chronic back pain due to surgeries[.]"  (*Id.* at 140.)  Further, Dr. Tribble noted in Plaintiff's medical history that the Plaintiff had reported "experiencing pain in his lower spine, right shoulder, left rib cage and sternum pain."  (*Id.*)

Further, the Disability Determination Explanation's "Findings of Fact and Analysis of Evidence" section listed back and neck pain in the analysis of the Plaintiff's listed severe impairments.  (ECF No. 9-3 at 26.)  In March 2017, Plaintiff indicated that his condition had worsened and that his pain was constant, with the pain radiating down both legs.  (*Id.* at 38.)  In the May 3, 2017 Disability Report Appeal, Plaintiff indicated that he was unable to walk more than one block without having severe pain in his back and that he is not able to sit longer than thirty minutes because he will start feeling severe lower back pain.  (ECF No. 9-6 at 20.)  The August 17, 2017 Disability Report Appeal stated under "activities" that among other things, "[h]e cannot do much house hold chores because of the pain in his legs and back."  (*Id.* at 29.)  Plaintiff noted that his conditions have not improved and

1   even when he rests he feels uncomfortable vibration in his lower back.  (*Id.* at 24.)  Plaintiff

2   had indicated that there had been changes as to his physical or mental conditions since the

3   last time he discussed his medical conditions, while noting that his back pain is constant

4   and the pain radiates down to his legs.  (*Id.* at 16.)

5   Although the ALJ's decision acknowledged that Plaintiff suffered from chronic back

6   pain, the ALJ failed to provide any reasons to support his conclusion that the Plaintiff's

7   allegation of chronic back pain was not supported by the objective medical evidence.  The

8   ALJ also failed to address why this contradictory evidence did not affect his decision and

9   ignored the fact that the Plaintiff had continuously been treated for his chronic back pain.

10   The ALJ did not refer to any specific part of the medical record that refuted Plaintiff's

11   complaints and the Court is not expected to "comb the administrative record to find specific

12   conflicts."  *See Brown-Hunter*, 806 F.3d at 494.

13   The Court concludes that the ALJ erred in rejecting Plaintiff's complaints without

14   specifically addressing why Plaintiff's chronic back pain complaints were not supported

15   by the record.  The ALJ therefore failed to provide clear and convincing reasons for such

16   rejection.

17   5.   Tremors and Shaking

18   a.   Plaintiff's Testimony

19   In response to the ALJ's question regarding notes in his medical records regarding

20   tremors, Plaintiff testified "I've always had the shaking in my hand, and [. . .] it, it can get

21   pretty bad. But it's constantly there now.  It's – I they think maybe I – I've taken like, lab

22   work.  They tried to see if maybe it was my thyroid, something or something[.]"  (ECF No.

23   9-2 at 52–53.)  As to the ALJ's question as to whether it affected his ability to use his hands

24   or write, Plaintiff stated "[y]eah, oh yes, yeah, especially if I'm holding something.  I'll

25   just be -- whoops.   It's frustrating, really frustrating not to be able to be under control of

26   your own body."  (*Id.* at 53.)  Plaintiff explained "I'm just nothing that I used to be. I don't

27

28

even I can't, I can't explain it, it's just something where I, I just get totally overwhelmed. I, I, I, you know, the other day, I shake, I twitch, I do – I'm, I'm jerking around. I just, I don't feel comfortable enough to where I would even put an employer or someone like that in jeopardy of, of me screwing something up[.]"   (*Id.* at 48.)   And when he gets overwhelmed, Plaintiff claimed that he "start[s] to shake [he] start[s] to sweat[.] [He] just feel like [. . .] just laying[.]"  (*Id.* at 50.)

The ALJ found that he had "considered the testimony by the [Plaintiff] at the hearing in this matter, that the [Plaintiff] has difficulty concentrating and he experiences pain, migraines and/or trigeminal neuralgia and chronic back pain. However, the objective medical evidence is inconsistent with [his] testimony in that the physical examinations of record reveal primarily benign findings and there is no history of therapy treatment or individual counseling over an extended period of time."  (*Id.* at 24.)

Even though the ALJ found that Plaintiff's testimony was inconsistent with the objective medical evidence, the ALJ failed to address Plaintiff's testimony about the intensity, persistence, and limiting effects of his tremors and shaking, which Plaintiff indicated was constant and affected his ability to use his hands and write.  The ALJ failing to specifically identify any part of Plaintiff's testimony that he determined was not credible prevents the Court from conducting a meaningful judicial review.  *See Smolen*, 80 F.3d at 1284 (An ALJ "must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion.").

Although the ALJ stated that "the objective medical evidence is inconsistent with [Plaintiff's] testimony in that the physical examinations of record reveal primarily benign findings and there is no history of therapy treatment or individual counseling over an extended period of time," the ALJ failed to provide any reasons for discounting Plaintiff's testimony as to his tremors and shaking.  (*See id.* at 24.)  By not specifically identifying what testimony is not credible and what evidence undermines the Plaintiff's complaints,

the ALJ failed to provide clear and convincing reasons supported by evidence in the record and cannot expect the Court to comb the administrative record to find specific conflicts that support his conclusion. *See Brown-Hunter*, 806 F.3d at 494 ("Indeed, '[o]ur decisions make clear that we may not take a general finding—an unspecified conflict between Claimant's testimony ... and her reports to doctors—and comb the administrative record to find specific conflicts.'").

Accordingly, the Court concludes that the ALJ erred in rejecting Plaintiff's testimony without specifically addressing Plaintiff's testimony as to his tremors and shaking, as well as for failing to provide clear and convincing reasons for rejecting Plaintiff's testimony.

### b.   Plaintiff's Complaints in Medical Record

As for Plaintiff's complaints in medical record regarding his tremors and shaking, the ALJ did not acknowledge or address his complaints. (*See* ECF No. 9-2 at 23–24.)  The ALJ simply ignored the fact that Plaintiff had actually been treated for tremors and shaking, which can reasonably affect Plaintiff's ability to work and hold things.

The record as a whole indicates that Plaintiff made complaints regarding his tremors and shaking.  As for Plaintiff's tremors, Dr. Spier indicated in her October 10, 2017 Progress Notes that Plaintiff complained that he had a tremor that day.  (ECF No. 9-8 at 35, 50, 106.)  In her physical, Dr. Spier indicated that Plaintiff had a mild postural tremor but does not interfere with handwriting.  (*Id.* at 38.)  On November 26, 2018, Dr. Spier noted in her physical exam that Plaintiff had fine postural tremors.  (*Id.* at 110.)  As for the shaking, Plaintiff indicated in the May 3, 2017 Disability Report Appeal that there had been a change in his daily activities due to his physical or mental conditions, which he noted that he is unable to be around people or loud noises because he will start shaking and will have a panic attack, in which he claims to have at least three times a month.  (ECF No. 9-6 at 20.)

Since the ALJ's ignored Plaintiff's complaints as to his tremors and shaking, the Court remands to give the ALJ an opportunity to so address.  As stated, shaking and tremors could affect the ALJ's findings under Step 5.

## C. Harmless Error

"ALJ errors in social security cases are harmless if they are 'inconsequential to the ultimate nondisability determination.'"  *Marsh*, 792 F.3d at 1173 (quoting *Stout*, 454 F.3d at 1055–56); *see also Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (An ALJ's reliance on erroneous reasons is harmless so long as the "remaining reasoning and ultimate credibility determination were adequately supported by substantial evidence").  "[W]here the magnitude of an ALJ error is more significant, then the degree of certainty of harmlessness must also be heightened before an error can be determined to be harmless."  *Marsh*, 792 F.3d at 1173.

The ALJ generally found that the Plaintiff's testimony was inconsistent with the objective medical evidence and Plaintiff's complaints in the record were unsupported by the objective medical evidence, but failed to specifically identify which testimony and complaints that he found not credible and why.  As indicated above, this was legal error. *See Brown-Hunter*, 806 F.3d at 494.  The Court cannot find the ALJ's erroneous rejection of Plaintiff's testimony and complaints harmless because if they were credited, it would likely be consequential to the ultimate disability determination.  *See id.* (finding that the ALJ's failure to identify the testimony she found not credible and failure to link that testimony to the particular parts of the record supporting her non-credibility determination was legal error and was not harmless).

## D. Remand is Required

"The rare circumstances that result in a direct award of benefits are not present in this case."  *Leon*, 880 F.3d at 1047.  "When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before

1  directing an award of benefits." *Id.* at 1045 (citing *Treichler*, 775 F.3d at 1099).  The

2  credit-as-true analysis "permits, but does not require, a direct award of benefits on review

3  but only where the [ALJ] has not provided sufficient reasoning for rejecting testimony and

4  there are no outstanding issues on which further proceedings in the administrative court

5  would be useful." *Id.* at 1044.  Under the three-part rule, the Court first considers "whether

6  the 'ALJ failed to provide legally sufficient reasons for rejecting evidence, whether

7  claimant testimony or medical opinion.'" *Id.* at 1045 (quoting *Garrison*, 759 F.3d at 1019).

8  This step is met for the reasons set forth above.

9        However, at the second step, the Court considers "whether there are 'outstanding

10  issues that must be resolved before a disability determination can be made' and whether

11  further administrative proceedings would be useful.'" *Id.* (quoting *Treichler*, 775 F.3d at

12  1101).  "In evaluating this issue, [the Court] consider[s] whether the record as a whole is

13  free from conflicts, ambiguities, or gaps, whether all factual issues have been resolved, and

14  whether the claimant's entitlement to benefits is clear under the applicable legal rules."

15  *Treichler*, 775 F3d at 1104–05.  "Where . . . an ALJ makes a legal error, but the record is

16  uncertain and ambiguous, the proper approach is to remand the case to the agency." *Id.* at

17  1105.  When, as here, the ALJ's findings regarding the Plaintiff's symptom testimony and

18  complaints are inadequate, remand for further findings on credibility is appropriate.  *See*

19  *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995).

20        As discussed above, the ALJ failed to properly evaluate Plaintiff's subjective

21  testimony and complaints in the medical record. The ALJ's findings are inadequate and

22  further administrative review may remedy the ALJ's errors, making remand appropriate in

23  this case.  *See Ghanim*, 763 F.3d at 1166; *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir.

24  2011); *Byrnes*, 60 F.3d at 642.  The Court is not going to create reasons that the ALJ did

25  not give or support in his findings, however, the Court does find that further administrative

26  proceedings are necessary to allow the ALJ to do this evaluation under these circumstances.

27

28

1  The Court finds that remand is proper in this case, since not all factual issues have been

2  resolved and it is not clear whether the Plaintiff is entitled to benefits under the applicable

3  legal rules. *See Treichler*, 775 F3d at 1104–05.

4       **E.  The Court Declines to Address Plaintiff's Remaining Argument**

5       Having found that remand is warranted, the Court declines to address Plaintiff's

6  remaining arguments as to whether the ALJ erred in discounting Plaintiff's Mother's

7  testimony, determining that the Plaintiff was not disabled despite finding that the Plaintiff

8  could not perform past relevant work, not evaluating Plaintiff's combined physical and

9  mental impairments, and determining that the Social Security Administration met its

10  burden of proof under Step Five.  *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012)

11  ("Because we remand the case to the ALJ for the reasons stated, we decline to reach

12  [plaintiff's] alternative ground for remand."); *see also Wanda v. Saul*, No. EDCV 20-0772-

13  RAO, 2021 WL 515616, at *5 (C.D. Cal. Feb. 2021) ("Having found that remand is

14  warranted, the Court declines to address Plaintiff's remaining issue."); *Kershner v. Saul*,

15  No. 2:18-CV-0717-DB, 2020 WL 5366520, at *4 n.5 (E.D. Cal. Sept. 2020) ("Given the

16  ALJ's error, that correction of the error may alter the entirety of the ALJ's opinion, and in

17  light of plaintiff's request that this matter be remanded for further proceedings, the court

18  finds it unnecessary to reach plaintiff's remaining claims of error."); *Newton v. Colvin*, No.

19  2:13–cv–2458–GEB–EFB, 2015 WL 1136477, at *6 n.4 (E.D. Cal. Mar. 2015) ("As the

20  matter must be remanded for further consideration of the medical evidence, the court

21  declines to address plaintiff's remaining arguments."); *Augustine ex rel. Ramirez v. Astrue*,

22  536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other

23  claims plaintiff raises, none of which would provide plaintiff with any further relief than

24  granted, and all of which can be addressed on remand.").

25  ///

26  ///

27                             31

28

## VI.    CONCLUSION

Based on the above reasoning, Plaintiff's Motion for Summary Judgment (ECF No. 19) is **GRANTED**, the Commissioner's Cross-Motion for Summary Judgment (ECF No. 22) is **DENIED**, and the case is **REMANDED** for further proceedings.

**IT IS SO ORDERED**.

Dated:  December 6, 2021

Hon. Bernard G. Skomal
United States Magistrate Judge